JOURNAL ENTRY AND OPINION
Petrina Hernandez appeals from a judgment of the trial court pursuant to a jury verdict finding her guilty of preparation of drugs for sale in violation of R.C. 2925.07 and possession of marijuana in violation of R.C. 2925.11, in an amount exceeding 20,000 grams. She now appeals and assigns the following as error for our review:
 PETRINA HERNANDEZ'S CONVICTIONS FOR DRUG LAW ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having reviewed the arguments presented by both parties and the applicable law, we affirm the judgment of the trial court.
The record before us reveals on January 3, 2000, DEA Task Force Officer Deborah Harrison received information from police in Phoenix, Arizona that a possible drug courier, identified as Petrina Hernandez, was en route to Cleveland. Hernandez was a passenger on America West Flight No. 534. The police also provided her baggage tag numbers.
Harrison testified at trial she verified the information by going to the American West ticket counter in the Cleveland airport and learned that Hernandez was in fact on that flight and she did check luggage. Harrison also received the tag numbers from the Phoenix, Arizona airport. Once she had obtained this information, she briefed Task Force Officers James Gilchrist and Carlos Negron. She then positioned herself so that she could observe the passengers as they exited the plane in an attempt to identify Hernandez. Harrsion did identify Hernandez and maintained surveillance of her as she walked to the baggage claim area.
Gilchrist testified he had been in the baggage area and that his drug dog, Shane, alerted to two pieces of luggage by aggressively scratching and biting the luggage while barking. The luggage belonged to Hernandez. He then approached Hernandez after she claimed her luggage, identified himself, and asked if he could search her luggage. Hernandez consented to the search, which revealed two large packages wrapped in brown wrapping paper. The packages were later determined to be forty-eight pounds of marijuana.
Upon discovering the drugs, Hernandez was placed under arrest. Hernandez was then given the opportunity to cooperate by attempting to deliver the drugs to its intended source. Several police agencies participated in an attempted controlled drug sale at the Four Points Hotel in Euclid, Ohio. Hernandez placed numerous phone calls to an individual known only as Holly or Dr. Tony. When she finally reached someone, she told them she was at the hotel and that they should pick up the luggage. However, after waiting for several hours, no one came to the hotel. Hernandez then gave a written statement to the police which detailed how she came to transport the drugs to Cleveland.
Negron also testified and verified the version of events as provided by Gilchrist.
For its case-in-chief, only Hernandez testified on her own behalf. She testified that she lives in Arizona with her four children and is the sole provider for the family. She stated that one day at work a girl by the name of Shelly approached her and stated that if she would bring packages from one state to another, she could make a lot of money. Hernandez testified that Shelly brought a man named Adolfo or Rodolfo to her home and told her she would bring two suitcases to Cleveland, Ohio, make a reservation, and Adolfo would make the rest of the arrangements. On Monday morning she arrived home from work and a few minutes later, Adolfo arrived. She told him she did not want to go. However, she stated that he threatened her and her children so she felt forced to carry out the plan. She got in a taxi and found two suitcases and $150.00 in cash. After arriving at the airport, she boarded a plane headed for Cleveland. Shortly after claiming her luggage, she was arrested.
In her written statement, Hernandez stated she did not know what was in the luggage and that she agreed to transport it because she needed the money.
On July 17, 2000, a jury trial commenced against Hernandez and she was found guilty on both counts. The trial court sentenced her to eighteen months on count one and to the mandatory eight years on court two.
In her sole assignment of error, Hernandez claims her conviction was against the manifest weight of the evidence.
The court in State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed an a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
In this case, the state assumed the burden to prove Hernandez' guilt of preparation of drugs for sale beyond a reasonable doubt. R.C. 2925.07(A) provides as follows:
 No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance when the person intends to sell or resell the controlled substance or when the person knows or has reasonable cause to believe that another person intends to sell or resell the controlled substances.
The State also assumed the burden to prove Hernandez' guilt of possession of marijuana beyond a reasonable doubt. R.C. 2925.11(A) states:
 No person shall knowingly obtain, possess, or use a controlled substance.
In her written statement, Hernandez wrote:
 * * * Talked to an employee, her name is Shelly. * * * Told me last week when I was arriving to work she had made an easy 2 grand bringing stuff like marijuana through the airport and it would be easy to do it. * * *.
In addition, when the officers confronted Hernandez at the airport, she did not deny the luggage or its contents belonged to her. In fact, she admitted in her written statement that her friend told her she could make an easy 2 grand bringing stuff like marijuana through the airport. Hernandez further wrote, I did this stupid, stupid thing to help out my financial situation. She also provided the officers with a piece of paper given to her in Arizona that contained the names of two individuals the luggage was to be delivered to, the name of the hotel designated for the delivery, and a cell phone number.
After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and TERRENCE O'DONNELL, J., CONCUR.
 ______________________________________ PATRICIA ANN BLACKMON, PRESIDING JUDGE